UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SANDRA LINDSEY,

      Plaintiff,

      v.                                    Case No. 04-C-107

CITY OF RACINE, and
ED FOSTER, TAX ASSESSOR,

      Defendants.

**DECISION AND ORDER**

**I. PROCEDURAL AND FACTUAL BACKGROUND**

This action was commenced on January 20, 2004, when the plaintiff, Sandra Lindsey ("Lindsey"), proceeding *pro se*, filed a complaint against the City of Racine ("Racine") and Ed Foster ("Foster") alleging that her constitutional rights were violated pursuant to 42 U.S.C. § 1983. The plaintiff alleges that the defendants

> acting in offical [sic] capacity and under the color of law ha[ve] subjected the plaintiff to on-going discrimination, denial of due process, equal protection of the law and unreasonable seizures of her property by assessing her real estate grossly in excess of its true market value forcing the plaintiff to pay property taxes that she did not owe.

(Pl.'s Compl. at [unpaginated] 1.) This action was originally assigned to United States District Judge Thomas J. Curran, and was transferred to this court after all parties consented to magistrate judge jurisdiction.

Currently pending before the court are the defendants' motion for summary judgment and the plaintiff's motion for sanctions. The motions are now fully briefed and are ready for resolution. For

the reasons which follow, the defendants' motion for summary judgment will be granted and the plaintiff's motion for sanctions will be denied as moot.

In accordance with the provisions of Civil Local Rule 56.2(a) (E.D. Wis.), the defendants' motion for summary judgment was accompanied by a set of proposed findings of fact. Civil Local Rule 56.2(b)(1) provides as follows:

> (1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists. The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists.

In turn, Civil Local Rule 56.2(e) provides:

> (e) In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

In response to the defendants' motion for summary judgment, the plaintiff filed a document entitled "Objection to Defendant's Motion for Summary Judgment and Motion for Sanctions." That document contains argument as to why summary judgment should not be granted in favor of the defendants. She has also filed her own affidavit averring that "[n]either Ed Foster or any other City of Racine building inspector has been inside my home at 1530 Carlisle in Racine, Wisconsin to conduct an inspection since 1999 to date." (Sandra Lindsey Aff. ¶ 1.) Additionally, she has filed an affidavit executed by Samantha Lindsey averring, among other things, that Samantha had personally assisted the plaintiff in her effort to seek "a reduction of taxes from the City of Racine because of the damage to her home"; that she and the plaintiff "were able to get the taxes lowered previously by calling a City of Racine official who lowered [t]he taxes"; and that to "my knowledge and hers that was all we were required to do if we sought to contest the assessment." (Samantha Lindsey Aff. ¶¶

2

2-3.) She also has filed a document entitled "Plaintiff's Objection to Defendants['] Motion for Summary Judgment." Finally, she has filed a "Motion and Brief in Opposition to Defendant's Motion for Summary Judgment," which contains argument in opposition to the defendants' motion for summary judgment; attached to that brief are photographs, miscellaneous documents and an affidavit signed by "Willie Earl Norman," in which Mr. Norman describes the physical condition of the plaintiff's dwelling at 1530 Carlisle and the physical condition of the dwelling's garage. What the plaintiff has not submitted, however, are any responses to the defendants' proposed findings of fact as required by Civil Local Rule 56.2(b)(1). Consequently, in accordance with Civil L.R. 56.2(e) the court concludes that there is no genuine issue of material fact as to any of the defendants' proposed findings of fact. The undisputed material facts are as follows.

Sandra Lindsey is an adult residing at 1530 Carlisle Avenue, City and County of Racine, State of Wisconsin. (Def.'s Proposed Finding of Fact ("DPFOF") ¶ 1.) Lindsey purchased 1530 Carlisle Avenue on or about 1990 for a purchase price of $38,000. (DPFOF ¶ 2.) The dwelling at 1530 Carlisle Avenue is a "duplex" with upper and lower units. At all times material hereto, Lindsey resided in the lower unit. (DPFOF ¶ 3.) Lindsey obtained government funded loans to help "rehab" the property in question. (DPFOF ¶ 4.)

In January of 1999, a water pipe burst in the upper unit causing water damage to both upper and lower units. (DPFOF ¶ 5.) Lindsey made a claim against her homeowner's insurer for repair of the damage in question. At this point in time, a dispute is ongoing between Lindsey and her insurance company, and other contractors, arising out of the incident in question. (DPFOF ¶ 6.)

Lindsey alleges and asserts that, given the damage to her home which remains unrepaired, her City of Racine property taxes are too high and that her estimated fair market value upon which

the property taxes are based is inflated. (DPFOF ¶ 7.) Lindsey alleges that the City of Racine and Foster have discriminated against her by levying unfair (excessive) property assessments and taxes on her property thereby seizing her property (money) unreasonably. (DPFOF ¶ 8.)

Lindsey alleges that she has been targeted for the aforesaid discrimination because she is a minority homeowner. (DPFOF ¶ 9.) Lindsey alleges that this discrimination has been ongoing for a number of years. (DPFOF ¶ 10.)

Lindsey globally alleges and asserts a violation of § 1983 and that she has been denied due process and equal protection of the law because Foster and the City of Racine are assessing her real estate grossly in excess of its true market value forcing her to pay property taxes that she claims she does not owe. (DPFOF ¶ 11.)

Lindsey asserts that, if the repairs were performed properly as she requests, the fair market value of her home would be not less than $135,000. (DPFOF ¶ 12.)

The current assessed value of her home is $79,000. (DPFOF ¶ 13.) In 2004, in response to communications with Sandra Lindsey, the City of Racine and Ed Foster dropped her assessed value from $89,000 in 2003 to $79,000 in 2004; further, the drop in assessment represents the approximate cost to properly repair the items in the home which remain damaged. (DPFOF ¶ 14.)

In Wisconsin, if one wishes to contest their real estate taxes, the procedure is set forth in Wis. Stat. Chap. 70, which requires the homeowner to file with the appropriate taxing authority, a request for administrative review of the tax bill. It is undisputed that Sandra Lindsey has never followed this procedure and has never filed any written request with the City of Racine or its taxing authority or the appropriate board requesting review or reduction of her property taxes. (DPFOF ¶ 15.)

Sandra Lindsey concedes that, prior to 1999, she has no complaints with the conduct of the City of Racine or Ed Foster regarding assessments, determination of fair market value, or the like. (DPFOF ¶ 16.)

Sandra Lindsey concedes that she has absolutely no evidence whatsoever that Ed Foster and/or the City of Racine has adopted a policy of city-wide discrimination against minorities. (DPFOF ¶ 17.) Lindsey concedes that she has no evidence that the City of Racine and/or Ed Foster has discriminated in any way against other minority with regard to levying of property taxes, determining fair market value, or the like. (DPFOF ¶ 18.)

Lindsey concedes that Ed Foster, the only person with whom she has dealt regarding this issue, has never made any actual verbal statement which is discriminatory or in any way racially derogatory. (DPFOF ¶ 19.)

Lindsey concedes that the entire basis of her claim for "discrimination" is her perceived "attitude" of Ed Foster during her various contacts with him regarding this issue and that she perceives his "attitude" as evidencing discrimination against her because she is black and a woman. (DPFOF ¶ 20.)

Ed Foster states that he has not in any way discriminated against Lindsey and that her assessments have followed the general trend for increased market value for houses of similar type and location and documents included as part of his Affidavit establish that houses of similar type have received identical treatment; further, that race, gender or the like play no role in the assessments, and that the assessments associated with Lindsey's home are in line with the assessments of all other like or similar homes. After viewing the property based upon the request of Lindsey he actually did drop the assessed value $10,000 from 2003 to 2004. (DPFOF ¶ 21.)

5

Each and every year that taxes have increased, notice was given to Lindsey. (DPFOF ¶ 22.) Lindsey's tax increases match the trend for similar houses. (DPFOF ¶ 23.)

## II. ANALYSIS

A district court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e) (quoted in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "Summary Judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party'" *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party opposing a properly supported summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather must introduce affidavits or other evidence to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). To state it differently, "[a] party will be successful in opposing summary judgment only when they present

6

definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000) (quoting *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997) (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986)). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook*, 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith*, 129 F.3d at 425). "The evidence must create more than '"some metaphysical doubt as to the material facts."' *See Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001) (quoting *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 477 (7th Cir. 1995) (quoting *Matsushita Elec. Indus. Corp., v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). A mere scintilla of evidence in support of the nonmovant's position is insufficient. *See id.* (quoting *Liberty Lobby*, 477 U.S. at 252).

Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

As best as the court can discern, Lindsey's claims are twofold: (1) that she has been the victim of an unfair real estate tax assessment and (2) that such unfair assessment has been visited upon her because she is a black woman. For the reasons which follow, Lindsey's claims must be rejected and this action must be dismissed.

7

To the extent that Lindsey claims that her real estate assessments have been unfair, this court is not the appropriate forum in which to challenge them. Chapter 70 of the Wisconsin Statutes deals generally with the subject of property taxes. Wis. Stat. § 70.365 provides, in pertinent part, as follows:

> When the assessor assesses any taxable property, or any improvements taxed as personal property under s. 77.84(1), and arrives at a different total than the assessment of it for the previous year, the assessor shall notify the person assessed if the address of the person is known to the assessor, otherwise the occupant of the property. The notice shall be in writing an shall be sent by ordinary mail at least 15 days before the meeting of the board of review or before the meeting of the board of assessors under 1st class cities and in 2nd class cities that have a board of assessors under s. 70.075 and shall contain the amount of the changed assessment and the time, date and place of the meeting of the local board of review or of the board of assessors.

In turn, Wis. Stat. § 70.47 sets forth the procedures to be followed in the Board of Review proceedings. The Board of Review's duties include, *inter alia*, the duty to address objections to the amount or valuation of property being taxed. According to Wis. Stat. § 70.47(9),

> From the evidence before it the board shall determine whether the assessor's assessment is correct. If the assessment is too high or too low, the board shall raise or lower that assessment accordingly and shall state on the record the correct assessment and that that assessment is reasonable in light of all of the relevant evidence that the board received.

According to Wis. Stat. § 70.47(13), an appeal from the determination of the Board of Review shall be by an action for certiorari commenced within 90 days after the taxpayer receives the notice (under Wis. Stat. § 70.47(12)) of the amount of the assessment as finalized by the board and an explanation of appeal rights and procedures under subsection (13) and sections 70.85, 74.35 and 74.37. Those three statutory sections in turn set forth, respectively, the procedures the taxpayer may follow to have the assessment reviewed by the department of revenue, to recover unlawful taxes, and to pursue a claim for an excessive assessment, including filing an action in circuit court.

8

As noted previously, it is undisputed that Sandra Lindsey never followed the above-described procedure and never filed any written request with the City of Racine or its taxing authority or the appropriate board requesting review or reduction of her property taxes. Yet, she now presumably seeks to have this federal court rule the assessment on her residence at 1530 Carlisle Avenue to be unfair.

The Tax Injunction Act, found at 28 U.S.C. § 1341, provides as follows:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Lindsey has not advanced any argument that the state remedies available to her to challenge the assessment of her property are not plain, speedy, and efficient. To the contrary, it would seem that the remedies available to her (as described above) would be in compliance with the Tax Injunction Act. *See, e.g., Rosewell v. LaSalle National Bank*, 450 U.S. 503, 528 (1981) ("Illinois' legal remedy that provides property owners paying property taxes under protest a refund without interest in two years is 'plain, speedy and efficient remedy' under the Tax Injunction Act."). Accordingly, to the extent that Lindsey is seeking to have this court interfere with the local taxing authorities in their effort to assess, levy, or collect certain real estate taxes by finding such assessments to be somehow unfair or unreasonable, her claim must be denied under the provisions of the Tax Injunction Act. *See also Winicki v. Mallard*, 783 F.2d 1567 (11th Cir. 1986) (where a § 1983 action is grounded in an allegation of an unconstitutional tax scheme, to survive dismissal the plaintiff must demonstrate that there is no plain, adequate, and complete state remedy available).

Lindsey also claims, however, that the assessments have been made against her property because she is a minority homeowner; in other words, she claims that she has been discriminated

9

against because of her race. This is a serious charge. Yet, Lindsey has offered no evidence to support such a charge.

To the contrary, as stated previously, Sandra Lindsey concedes that she has absolutely no evidence whatsoever that Ed Foster and/or the City of Racine has adopted a policy of city-wide discrimination against minorities. (DPFOF ¶ 17.) Lindsey also concedes that she has no evidence that the City of Racine and/or Ed Foster has discriminated in any way against other minority with regard to the levying of property taxes, determining fair market value, or the like. (DPFOF ¶ 18.)

Lindsey also concedes that Ed Foster, the only person with whom she has dealt regarding this issue, has never made any actual verbal statement which is discriminatory or in any way racially derogatory. (DPFOF ¶ 19.) Finally, Lindsey concedes that the entire basis of her claim for "discrimination" is her perceived "attitude" of Ed Foster during her various contacts with him regarding this issue and that she perceives his "attitude" as evidencing discrimination against her because she is black and a woman. (DPFOF ¶ 20.)

By contrast, Ed Foster states (and no evidence has been offered to the contrary) that he has not in any way discriminated against Lindsey and that her assessments have followed the general trend for increased market value for houses of similar type and location and documents included as part of his Affidavit establish that houses of similar type have received identical treatment; further, that race, gender or the like play no role in the assessments, and that the assessments associated with Lindsey's home are in line with the assessments of all other like or similar homes. (DPFOF ¶ 21.)

In order to impose liability on a municipality for a violation of 42 U.S.C. § 1983 a plaintiff must demonstrate that he or she was injured by the execution of an official government policy or custom. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978).

Lindsey has not provided any evidence of such a nature against the City of Racine. Moreover, in order to prevail on a claim against an individual, such as Ed Foster, for violating either 42 U.S.C. § 1983 (by denying the plaintiff equal protection) or § 1981,[1] a plaintiff must demonstrate that the defendant intentionally discriminated against the plaintiff because of her race. *See General Bldg. Contractors Assoc. v. Pennsylvania*, 458 U.S. 375 (1982); *McCalpine v. Foertsch*, 870 F.2d 409, 414 (7th Cir. 1989); *Bohen v. City of East Chicago, Indiana*, 799 F.2d 1180, 1186 (7th Cir. 1986) (In an action brought under § 1983 for a violation of equal protection, "we turn to an examination of principles that are generally applicable to all equal protection claims. The core of any equal protection case is, of course, a showing of intentional discrimination."). Once again, Lindsey has provided no admissible and relevant evidence that Ed Foster intentionally discriminated against her because of her race.

As previously stated, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Lindsey has failed to offer any evidence from which a reasonable trier of fact could find that Ed Foster or the City of Racine discriminated against Lindsey on account of her race. Consequently, her claims under 42 U.S.C. § 1983 and § 1981 (assuming that she made such a claim), must likewise be dismissed.

---

[1] 42 U.S.C. § 1981(a) provides that "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for sanctions be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**SO ORDERED** this  3rd  day of June 2005, at Milwaukee, Wisconsin.

    s/ William E. Callahan, Jr.
    WILLIAM E. CALLAHAN, JR.
    United States Magistrate Judge